Paul D. Woodard, Bar No. 282470
Marc S. Schechter, Bar No. 116190
Corey F. Schechter, Bar No. 279964
BUTTERFIELD SCHECHTER LLP
10021 Willow Creek Road, Suite 200
San Diego, California 92131-1603
(858)444-2300/FAX (858)444-2345
pwoodard@bsllp.com
mschechter@bsllp.com
cschechter@bsllp.com

Attorneys for Plaintiffs Larry Gliko and Gliko Contracting & Estimating, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY GLIKO, an individual, and GLIKO CONTRACTING & ESTIMATING, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>RONALD SNYDER, an individual; BENEFIT STRATEGIES GROUP, LLC, a Utah limited liability company; ALVIN PENRY, an individual; CORPORATE BENEFIT SYSTEMS, INC., a California corporation; FORETHOUGHT LIFE INSURANCE COMPANY, an Indiana corporation.<br><br>Defendants. | CASE NO. 2:22-cv-544<br><br>COMPLAINT FOR ACTIONS ARISING UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT AND RELATED STATE LAW CLAIMS<br><br>Trial Date: None set |

Plaintiffs Larry Gliko ("Gliko"), in his individual capacity, and Gliko Contracting & Estimating, Inc. ("GCE") (Gliko and GCE are collectively referred to herein as "Plaintiffs"), by and through their undersigned attorneys, file this Complaint against Defendants Ronald Snyder ("Snyder"), Benefit Strategies Group, LLC, ("BSG"), Alvin Penry ("Penry"), Corporate Benefit Systems, Inc. ("CBS"), Forethought Life Insurance Company ("Forethought"), and DOES 1-20 (aforementioned defendants are collectively referred to herein as "Defendants"), as follows:

## THE PARTIES

1. Gliko is a resident of Alpine, California. During the relevant time period, Gliko was a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Benefits for Corporate America Inc. Supplemental Executive Retirement Plan and later Benefits for Corporate America Inc. Deferred Compensation Plan.

2. GCE is a California corporation with its headquarters in Alpine, California. GCE conducts business throughout the State of California including the district where the action is filed.

3. Snyder is a resident of Salt Lake County, Utah.

4. BSG is a Utah limited liability company. BSG conducts business throughout the State of California including the district where the action is filed. Snyder is the President of BSG and the Managing Member.

5. Penry is a resident of Costa Mesa, California.

6. CBS is a California corporation with its headquarters in Costa Mesa, California. CBS conducts business throughout the State of California including the district where the action is filed.

7. Forethought is a domestic insurance corporation incorporated in the State of Indiana. Forethought is registered to conduct business in the State of California and conducts business throughout the State including the district where the action is filed.

## JURISDICTION AND VENUE

8. **Subject Matter Jurisdiction**. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

9. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

10. **Personal Jurisdiction**. ERISA provides for nation-wide service of

process pursuant to ERISA § 502, 29 U.S.C. § 1132. All Defendants are either residents of the United States or subject to the service in the United States, and this Court therefore has personal jurisdiction over them. Moreover, jurisdiction is proper against Penry because he is a resident of or is domiciled in California. Jurisdiction is proper over CBS because it transacted business in the State of California, contracted to supply services in the State of California, and caused injury within the State of California, as more specifically described herein. Similarly, jurisdiction is proper over BSG because it transacted business in the State of California, contracted to supply services in the State of California, and caused injury within the State of California, as more specifically described herein. Lastly, jurisdiction is proper over Forethought because it is registered to conduct business in the State of California and does in fact transact business in the State of California.

11. **Venue**. An action may be brought in the district court where the plan is administered, where the breach took place, or where a defendant resides or may be found. Venue lies within the Central District of California pursuant to 29 U.S.C. § 1132(e)(2), because the breaches alleged herein occurred in part in this District. Moreover, Penry and CBS may be found in this District.

## STATEMENT OF FACTS

### A. Work with Alvin Penry and CBS

12. Penry is a Certified Retirement Financial Advisor ("CRFA") who has been a financial professional since 1982.

13. During the relevant time period, Penry served and continues to serve as the Chief Executive Officer, Chief Financial Officer, and Director of CBS.

14. According to CBS's website, Penry "heads a full-service financial company that specializes in retirement plans, pension plans, employee benefits, individuals, retirees, business owners, professionals and other clients seeking to create and maintain a secure retirement."

15. GCE retained Penry in or about 2000 to act as the company's plan administrator for GCE's 401(k) plan.

16. In December of 2005, Penry presented Plaintiffs with a novel income deferral strategy utilizing a deferred compensation trust in conjunction with the purchase of an annuity.

17. Penry explained that corporate tax on GCE's profits could be deferred and that the money contributed under the arrangement on behalf of Gliko by GCE would be invested in an annuity.

18. Based on Penry's advice, from 2005 to 2008, GCE contributed a total of $800,000 to an annuity with Allianz Life Insurance Company (the "Allianz Annuity").

19. Penry facilitated the transaction by completely filling out the applications and documentation associated with the trust and the annuity on behalf of Plaintiffs and instructed them to sign where necessary.

20. Penry was the selling agent with respect to the purchase of the Allianz Annuity and received a significant commission (split 75% to Penry and 25% to Snyder).

21. Plaintiffs were concerned about the risks associated with purchasing the Allianz Annuity.

22. Penry assuaged those concerns by representing that purchasing the annuity was a virtually "risk-free" strategy with the only risk being the insurance company going bankrupt.

23. When Penry originally presented the idea to Plaintiffs, he failed to adequately explain the risks associated with the use of a non-qualified deferred compensation plan and rabbi trust arrangement.

24. Instead of walking Plaintiffs through the paperwork and explaining the transaction, Penry filled out all of the paperwork associated with the transaction and simply asked Plaintiffs to sign where necessary.

25. At no point in time did Penry explain how the structure would work, who would be the owner of the annuity, who would be the beneficiary, or why it was even necessary to use this particular arrangement.

**B.     Benefits for Corporate America Inc. Supplemental Executive Retirement Plan**

26. The Allianz Annuity was purchased in conjunction with the Benefits for Corporate America Inc. Supplemental Executive Retirement Plan (the "SERP").

27. The SERP was established by Benefits for Corporate America, Inc. ("BCA"), a Nevada corporation.

28. BCA was the "Plan Sponsor" and "Administrator" of the SERP at the time it was established and during the SERP's operation.

29. To begin participating in the SERP, Plaintiffs were provided a Co-Employment Agreement and Adoption Agreement that were filled out by Penry.

30. The SERP contains the following key provision:

a. **11.1 Non-Alienation of Benefits** – Other than as provided in Section 7.9, no benefit under the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge and any such action shall be void for all purposes of the Plan. No benefit shall in any manner be subject to the debts, contracts, liabilities, engagements or torts of any person, nor shall it be subject to attachments or other legal process for or against any person, except to such extent as may be required by law.

31. In conjunction with the SERP, BCA established the Benefits For Corporate America, Inc. Rabbi Trust (the "Rabbi Trust") effective as of January 1, 2005.

32. The purpose of the Rabbi Trust is to accept and hold contributions made to the SERP and make distributions to participants of the SERP.

33. The Rabbi Trust contains the following key provision:

a. **13.1** – Benefits payable to Participants and their beneficiaries under this Agreement may not be anticipated, assigned (either at law or in equity), alienated, pledged, encumbered or subjected to attachment, garnishment, levy execution or other legal or equitable process.

**C.    Transfer to Forethought Annuity**

34. In 2012, Penry met with Plaintiffs to discuss transferring the funds in the Allianz Annuity to an annuity with Forethought Life Insurance Company.

35. Penry presented a spreadsheet that compared the current and projected future value of the Allianz Annuity with a Forethought Annuity.

36. Penry represented it would be a prudent move to transfer the funds to the Forethought Annuity because it would result in more income at the time of Gliko's retirement.

37. Again, Penry acted as the selling agent with respect to the transfer and received a six-figure commission.

38. That said, the specific amount of the commission Penry received was never disclosed to Plaintiffs.

39. Moreover, Plaintiffs stopped receiving account statements for the Forethought Annuity after 2015. Thus, they were unable to confirm whether Penry's representations concerning the value of the Forethought Annuity were truthful.

40. Based on Penry's advice, Plaintiffs agreed to transfer the funds held in the Allianz Annuity to an annuity contract issued by Forethought (the "Forethought Annuity").

41. The Forethought Annuity constituted "plan assets" within the meaning of Section 3(42) of ERISA, 29 U.S.C. § 1002(42), and Department of Labor Regulation Section 2510.101-3, with respect to the SERP (and later the DC Plan).

**D.  Establishment of the Benefits for Corporate America, Inc. Deferred Compensation Plan**

42. At some point in 2013, unbeknownst to Plaintiffs, BCA amended and restated the SERP pursuant to a new deferred compensation plan called the Benefits for Corporate America, Inc. Deferred Compensation Plan (the "DC Plan"), effective as of January 1, 2013.

43. The DC Plan constitutes a funded deferred compensation plan.

44. The DC Plan does not meet the requirements of being an ERISA "top-hat" plan because the DC Plan is not an unfunded plan.

45. BSG was named as the "Administrator" of the DC Plan within the meaning of ERISA Section 3(16)(A).

46. BCA is the "Plan Sponsor" of the DC Plan.

47. An amended and restated trust called the Benefits for Corporate America, Inc. Deferred Compensation Trust Amended and Restated Trust Agreement (the "Amended Trust"), was established in conjunction with the DC Plan, effective as of December 15, 2014.

48. The purpose of the Amended Trust is holding and investing contributions made to the DC Plan and earnings thereon.

49. Importantly, Plaintiffs were not notified that the DC Plan and Amended Trust had been established in 2013 and 2014, respectively.

50. In fact, the first time Plaintiffs received a copy of the DC Plan document and Amended Trust document was on April 5, 2021, when said documents were emailed by Snyder.

51. Without a copy of the DC Plan and Amended Trust, Plaintiffs were completely left in the dark regarding the DC Plan's and the Amended Trust's terms and operation.

52. GCE executed an outsourcing agreement with BCA, an Adoption Agreement, and was approved by BSG. Therefore, GCE was a "Participating

Employer" under the terms of the DC Plan.

53. The DC Plan contains the following key provisions:

    a. **8.2 Nonalienation** – No benefit or interest of any Participant or Beneficiary under this Plan will be subject to any manner of assignment, alienation, anticipation, sale, transfer, pledge, or encumbrance, whether voluntary or involuntary.

    b. **2.21 "Insolvent"** means the Participating Employer is (i) unable to pay its debts as they become due, or (ii) subject to a pending proceeding as a debtor under the United States Bankruptcy Code.

    c. **2.24 "Participating Employer"** means an employer that: (i) executes an outsourcing agreement with the Sponsor; (ii) executes an Adoption Agreement, and (iii) is approved by the Administrator.

    d. **8.1 Funding –** Such amounts as the Administrator deems necessary or appropriate to fund the obligation to pay Deferral Amounts will be held in the Benefits for Corporate America, Inc. Deferred Compensation Trust by an independent third-party trustee selected by the Administrator, and as such are *earmarked* to pay benefits under the terms of the Plan. The Administrator will direct the Participating Employer to make periodic contributions to the trust at such times and ins such amounts as the Administrator deems appropriate. As provided in the Deferred Compensation Trust, *trust assets cannot be diverted to, or used for, any purpose except payments to Participants and Beneficiaries under the terms of the Plan or, if the Participating Employer is Insolvent, to pay the Participating Employer's creditors*.

**E.   Unauthorized Transfer of Funds**

54. Snyder and BSG exercised discretionary authority and control with respect to the management, investment, and disposition of the DC Plan's assets, including determining how such assets were to be invested, which control included pledging the Forethought Annuity as collateral for plan loans (described

below).

55. As a result of, and in the course of exercising such control over the DC Plan's assets, Snyder and BSG were acting as "fiduciaries" of the DC Plan and Amended Trust within the meaning of Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

56. On information and belief, Snyder and BSG also acted as investment fiduciaries of the DC Plan and Amended Trust under ERISA Section 3(21) as a result of receiving compensation for the provision of investment advice with respect to the DC Plan and/or the Amended Trust.

57. On information and belief, as the Administrative Trustee of the DC Trust, Snyder and BSG took out loan(s) issued by Insurative Premium Finance.

58. On information and belief, BSG and Snyder pledged the assets of the DC Plan/Amended Trust, including the Forethought Annuity.

59. BSG and Snyder did not disclose to Plaintiffs the fact that they had pledged the Forethought Annuity as collateral on a loan issued to the DC Trust.

60. On information and belief, the loan(s) was later sold to Crystal Lake Bank, who called the note.

61. In March of 2021, Plaintiffs discovered that approximately $446,103.30 was improperly transferred from the Forethought Annuity held in trust for Gliko by the Amended Trust.

62. Although $446,103.30 was transferred out of the Forethought Annuity, the monetary impact to Plaintiffs is significantly greater than $446,103.30.

63. The contract value of the Forethought Annuity was $810,663.19 and the guaranteed lifetime income account value was $1,178,131.91, as of October 16, 2017.

64. Following the transfer, the contract value dipped to $317,580.31 and the guaranteed lifetime income account value reduced to $488,956.67, as of

October 16, 2018.

65. The most recent account statement shows the contract value to be $313,253.98 and the guaranteed lifetime income account value at $549,391.71, as of October 20, 2020.

66. The last annuity statement that Plaintiffs received as of October 16, 2015, showed the annuity had a contract value of $800,372.75 and a guaranteed lifetime income value of $1,048,533.21.

67. Per an email from Penry, with the contract increasing at 5% per year under the rider, the guaranteed lifetime income value of the annuity would be approximately $1,336,000 (in 2020), which would pay Gliko $66,000 per year.

68. As stated above, as of October 16, 2020, the contract value has dropped to $313,253.98 and the guaranteed lifetime income account value has reduced to $549,391.71.

69. That means that the withdrawal of the $446,103.30 from the Forethought Annuity resulted in $786,608.30 in <u>guaranteed</u> lifetime income being wrongfully taken from Plaintiffs.

## FIRST CAUSE OF ACTION

**[Breach of Fiduciary Duty under 29 U.S.C. § 1001 et seq.]**

**(Against Snyder and BSG)**

70. Plaintiffs incorporate by reference the above paragraphs as though they were fully set forth herein.

71. BCA is the "Sponsor" of the DC Plan within the meaning of ERISA.

72. Gliko was a participant in the DC Plan within the meaning of ERISA.

73. BSG and Snyder acted as the Plan Administrator within the meaning of ERISA.

74. BSG and Snyder exercised discretionary authority and control with respect to the management, investment and disposition of the DC Plan's assets, including determining how such assets were to be invested, which control included pledging the Forethought Annuity as collateral for plan loans issued to the DC Plan.

75. As a result of, and in the course of exercising such control over the DC Plan's assets, Snyder and BSG were acting as "fiduciaries" of the DC Plan and Amended Trust within the meaning of Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

76. Section 404(a) of ERISA, 29 U.S.C. § 104(a) required Snyder and BSG, when acting in their capacity as fiduciaries of the DC Plan, to act with respect to the DC Plan for the exclusive benefit of the DC Plan's participants with a high level of skill, prudence, and diligence, and to diversify the DC Plan's assets to minimize the risk of large losses.

77. The pledge of the Forethought Annuity as collateral to loans issued to the DC Plan was imprudent and inappropriate for the DC Plan and Amended Trust.

78. Moreover, the pledge of the Forethought Annuity violated the terms of the Sections 8.1 and 8.2 of the DC Plan.

79. The pledge of the Forethought Annuity to secure plan loans to the DC Plan was not undertaken for the exclusive benefit of the DC Plan participants, including Gliko.

80. Therefore, Snyder and BSG violated their ERISA fiduciary duties to Plaintiffs by pledging the Forethought Annuity as collateral to loans issued to the DC Plan and allowing $446,103.30 to be surrendered without Plaintiffs' knowledge or consent.

81. As a result of Snyder's and BSG's breaches of their fiduciary duties to Plaintiffs described above, the surrender of the $446,103.30 from the

Forethought Annuity resulted in $786,608.30 in <u>guaranteed</u> lifetime income being wrongfully taken from Plaintiffs.

82. As a direct and proximate cause of the fiduciary breaches and ERISA violations, Plaintiffs are entitled to all such relief as available under ERISA.

83. Pursuant to 502(g)(1) of ERISA, 29 U.S.C. 1132(g)(1), Plaintiffs request an award against Snyder and BSG of Plaintiffs' reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### [Claim for Relief Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2)]

### (Against Snyder, BSG, and DOES 1-10)

84. Plaintiffs incorporate by reference the above paragraphs as though they were fully set forth herein.

85. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), allows civil actions by participants and beneficiaries for relief for breaches of ERISA fiduciary provisions under ERISA § 409, 29 U.S.C. § 1109.

86. Consequently, this language permits benefit plan participants and beneficiaries to argue that the plan suffered losses due to alleged fiduciary duty breaches.

87. In the present case, BSG and Snyder served as the Administrative Trustee of the Amended Trust and Administrator of the DC Plan.

88. As the Managing Member of BSG, Snyder made all decisions on behalf of the entity concerning the administration of the DC Plan and Amended Trust.

89. In addition to pledging the Forethought Annuity as collateral, BSG and Snyder pledged other assets of the DC Plan/Amended Trust as well.

90. By pledging the assets of the DC Plan/Amended Trust, Snyder and BSG violated the anti-alienation provision under ERISA and under the DC Plan

itself. Such a violation constitutes a breach of fiduciary duty under ERISA § 502(a)(2).

91. For this claim, Plaintiffs seek to recover on behalf of the DC Plan <u>all losses</u> sustained by the DC Plan based on the improper pledging and transfer of plan assets.

92. Pursuant to 502(g)(1) of ERISA, 29 U.S.C. 1132(g)(1), Plaintiffs request an award against Snyder and BSG of Plaintiffs' reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

## [Claim for Relief Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)]

## (Against Snyder, BSG, and DOES 1-10)

93. Plaintiffs incorporate by reference the above paragraphs as though they were fully set forth herein.

94. ERISA § 501(a)(3) provides that a participant may bring a civil action to "(A) enjoin an act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. 29 U.S.C. § 1132(a)(3).

95. A participant "can pursue the remedy that will put the [participant] in the position he or she would have attained but for the trustee's breach." *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012).

96. At all relevant times, Snyder and BSG were a fiduciary with respect to the Plan pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

97. Snyder and BSG owe certain duties to plan participants and beneficiaries under ERISA. Among the duties, ERISA imposes both a duty of loyalty and a duty of care. See 29 U.S.C. § 1104(a)(1); *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985).

98. The duty of care compels a fiduciary to act "with the care, skill,

prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

99. By pledging the Forethought Annuity as collateral to loans issued to the DC Plan, Snyder and BSG violated to terms of the DC Plan which explicitly prohibited such conduct under Section 8.2.

100. Plaintiffs seek equitable relief to redress such violations of the terms of the DC Plan including, but not limited to, surcharge.

101. Pursuant to 502(g)(1) of ERISA, 29 U.S.C. 1132(g)(1), Plaintiffs request an award against Snyder and BSG of Plaintiffs' reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

**[Claim for Relief Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)]**

**(Against Snyder, BSG, Forethought, and DOES 1-10)**

102. Plaintiffs incorporate by reference the above paragraphs as though they were fully set forth herein.

103. ERISA § 501(a)(3) provides that a participant may bring a civil action to "(A) enjoin an act or practice which violates any provision of this subchapter or the terms of the plan".

104. The Forethought Annuity constitutes "plan assets" within the meaning of Section 3(42) of ERISA, 29 U.S.C. § 1002(42), and Department of Labor Regulation Section 2510.101-3, with respect to the DC Plan.

105. The Forethought Annuity was specifically purchased for and earmarked to pay benefits to Gliko.

106. Forethought is the custodian of the Forethought Annuity and is responsible for the administration and distribution of the funds held in the Forethought Annuity.

107. The DC Plan contains an anti-alienation provision providing that "[n]o benefit or interest of any Participant or Beneficiary under this Plan will be subject to any manner of assignment, alienation, anticipation, sale, transfer, pledge, or encumbrance, whether voluntary or involuntary."

108. On January 22, 2022, Snyder and BSG drafted a memorandum to participants of the DC Plan regarding the status of the plan and the Amended Trust.

109. In the memorandum, Snyder and BSG make the following statements/representations: (1) that "the amount of assets presently in the trust are insufficient to pay all expected benefits under the plan"; (2) Snyder and BSG intend to "shut down the trust and distribute all benefits to participants"; and (3) Snyder and BSG "do not anticipate making distributions from the trust until the Committee determines the priority of claims to be paid".

110. Based on the memorandum, upon information and belief, Plaintiffs allege that Snyder and BSG intend to use some or all of the funds held in the Forethought Annuity to pay benefits owed to participants other than Gliko.

111. Based on the memorandum, upon information and belief, Plaintiffs allege that Snyder and BSG intend to create a "Committee" with the power and authority to distribute the funds held in the Forethought Annuity to pay benefits owed to participants other than Gliko.

112. However, the payment of any portion of the funds held in the Forethought Annuity to any person other than Gliko constitutes a violation of the DC Plan's anti-alienation provision.

113. Plaintiffs therefore request that this Court issue an injunction prohibiting Snyder, BSG, Forethought, and DOES 1-10 from distributing the funds held in the Forethought Annuity to any participant other than Gliko.

114. Plaintiffs further request that this Court issue an injunction prohibiting any future "Committee" established by or approved by Snyder and

BSG from distributing the funds held in the Forethought Annuity to any participant other than Gliko.

115. Plaintiffs further seek the removal of all fiduciaries of the DC Plan and Amended Trust and the appointment of successor fiduciaries for the DC Plan and Amended Trust pursuant to Plaintiffs' selection and the Court's approval.

116. Plaintiffs further seek a permanent injunction enjoining Snyder and BSG who have breached their duties under ERISA from serving as ERISA fiduciaries in the future.

117. Lastly, Plaintiffs request a declaration from the Court confirming Plaintiffs' entitlement to the funds held in the Forethought Annuity.

118. Pursuant to 502(g)(1) of ERISA, 29 U.S.C. 1132(g)(1), Plaintiffs request an award against Snyder and BSG of Plaintiffs' reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION

### [Supplemental State Law Claim – Negligence]

### (Against Penry and CBS)

119. Plaintiffs incorporate by reference the above paragraphs as though they were fully set forth herein.

120. The elements required for a negligence claim are "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." (*Ladd v. County of San Mateo*, 12 Cal.4th 913, 917 (1996).)

121. Plaintiffs retained Penry and CBS to provide financial and retirement advice.

122. Penry and CBS hold themselves out as being experts in the field of retirement benefits and administration.

123. By virtue of the relationship, Penry and CBS owed Plaintiffs a duty to use due care in performing duties and providing advice to Plaintiffs.

124. Penry and CBS advised Plaintiff to purchase the Allianz Annuity and filled out all the necessary paperwork to allow GCE to become an adopting employer and Gliko a participant in the SERP and later DC Plan.

125. Although Penry and CBS advised Plaintiffs to enter into the transactions at issue, Penry and CBS failed to adequately explain how the structure would operate.

126. Penry and CBS breached their duty of care by: (1) misrepresenting the structure of the transaction in a manner that Plaintiffs believed they were simply purchasing an annuity and that the investment could not lose investment value; (2) negligently represented that purchasing the annuities was a "risk free" investment; (3) failing to disclose the fact that Gliko's entitlement to the Forethought Annuity was limited to that of unsecured creditor; and (4) failing to disclose that GCE was not the legal "owner" of the Forethought Annuity and that the legal owner of the annuity was the Amended Trust.

127. Plaintiffs would not have entered into the transaction(s) described in this Complaint but for the advice of Penry and CBS.

128. A reasonably prudent person would have ensured that the structure of the transaction at issue was fully disclosed to Plaintiffs.

129. As a direct and proximate result of Penry's and CBS's aforementioned negligent conduct, Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

**[Supplemental State Law Claim – Conversion]**

**(Against Snyder and BSG)**

130. Plaintiffs incorporate by reference the above paragraphs as though they were fully set forth herein.

131. Plaintiffs are the rightful owners of the Forethought Annuity funds.

132. Snyder and BSG willfully interfered with and converted for the

Amended Trust's use and benefit the Forethought Annuity funds, as alleged in this Complaint.

133. Snyder and BSG had no lawful justification for interfering with the Forethought Annuity funds.

134. Snyder's and BSG's interference were done with the intent to exercise dominion or control over the Forethought Annuity funds inconsistent with Plaintiffs' rights.

135. As a result of Snyder's and BSG's interference, Plaintiffs have been deprived of the use and possession of the Forethought Annuity funds, to which they were entitled, as alleged in this Complaint.

136. As a result of the conversion, Plaintiffs were damaged in an amount to be determined at trial, but which is not less than $786,608.30.

137. Plaintiffs are entitled to an award of damages resulting from Snyder's and BSG's conversion.

138. Because Snyder's and BSG's conversion was willful, malicious, intentional, and/or recklessly indifferent towards Plaintiffs' rights, Plaintiffs are also entitled to an award of punitive damages and all costs, expenses, and attorneys' fees incurred by Plaintiffs in these proceedings.

## SEVENTH CAUSE OF ACTION

**[Supplemental State Law Claim – Fraudulent Concealment/Nondisclosure]**

**(Against Snyder and BSG)**

139. Plaintiffs incorporate by reference the above paragraphs as though they were fully set forth herein.

140. As fiduciaries of Plaintiffs, Snyder and BSG owed duties of honesty and disclosure to Plaintiffs.

141. As a result, Snyder and BSG had a legal duty to disclose that the Amended Trust's assets were encumbered by debt, that the Amended Trust was unable to repay that debt, that they had surrendered $446,103.30 from the

Complaint   Case No. 2:22-cv-544

Forethought Annuity, and that a bank was seizing the Amended Trust's assets.

142. Snyder and BSG knew this information but did not disclose it to Plaintiffs at the time Snyder and BSG surrendered $446,103.30 from the Forethought Annuity.

143. Snyder and BSG concealed this information from Plaintiffs until after $446,103.30 were surrendered from the Forethought Annuity.

144. This nondisclosed information was material.

145. Snyder's and BSG's nondisclosure and concealment directly and proximately caused injury and damage to Plaintiffs.

146. Plaintiffs have been damaged by Snyder's and BSG's conduct in an amount to be proven at trial, but which is not less than $786,608.30.

147. Plaintiffs are entitled to an award of damages arising out of and resulting from Snyder's and BSG's fraudulent concealment/nondisclosure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor as follows:

1. Award Plaintiffs damages in the amount according to proof, but in the amount of at least $786,608.30;

2. Recovery on behalf of the DC Plan all losses sustained by the DC Plan pursuant to ERISA § 502(a)(2);

3. Equitable relief and injunctive relief provided under ERISA § 502(a)(3);

4. Removal of Snyder and BSG as fiduciaries of the DC Plan and Amended Trust;

5. Appointment of successor fiduciaries of the DC Plan and Amended Trust;

6. A declaration from the Court confirming Plaintiffs' entitlement to the funds held in the Forethought Annuity.

7. Pre and post judgment interest, as afforded by law;

8. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

9. Such other equitable and remedial relief as is appropriate.

DATED: January 25, 2022          BUTTERFIELD SCHECHTER LLP


By: s/Paul D. Woodard
PAUL D. WOODARD
MARC S. SCHECHTER
COREY F. SCHECHTER
Attorneys for Plaintiffs
Larry Gliko and Gliko Contracting & Estimating, Inc.